**Affirmed and Opinion filed November 10, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00663-CR

## EX PARTE MARCOS M. FLORES, Appellant

**On Appeal from the County Criminal Court at Law No. 5
Harris County, Texas
Trial Court Cause No. 1969753**

## O P I N I O N

Appellant Marcos Flores was charged with the offense of unlawfully carrying a handgun in a vehicle as a member of a criminal street gang. *See* Tex. Pen. Code Ann. §§ 46.02(a-1)(2)(C), 71.01(d) (West Supp. 2014). Appellant filed pre-trial applications for writ of habeas corpus challenging the constitutionality of the statute. After a hearing, the trial court issued an order denying the applications. Appellant challenges the trial court's denial on three grounds.

In his first issue, appellant argues the statute violates the First Amendment to the United States Constitution because it is a content-based regulation of expression that fails to satisfy strict scrutiny and because it restricts freedom of

association. We conclude the statute is not subject to strict scrutiny because it is justified without reference to the content of any expression and does not infringe any right of intimate or expressive association. In his second issue, appellant argues the statute is unconstitutional because the terms "criminal street gang" and "member" are overbroad. In his third issue, appellant argues the statute is unconstitutionally vague and provides law enforcement with unfettered discretion to arrest individuals. We conclude that appellant's arguments rely on an incorrect construction of the statute and that the statute is neither overbroad nor vague when correctly construed. We therefore affirm the trial court's denial of the writ applications.

## BACKGROUND

Although the charging instrument is not in our record, the parties agree that appellant was charged by information with the misdemeanor offense of unlawfully carrying a weapon as a member of a criminal street gang.[1] Appellant filed a pretrial application for writ of habeas corpus and an amended application challenging the constitutionality of the statute. After a hearing, the trial court stated that "a reasonable construction may be ascertained from the statute that renders it constitutional" and denied appellant's requested relief. This appeal followed.

---

[1] Other appellate courts have affirmed denials of pretrial habeas applications raising constitutional challenges on the ground that the charging instrument is not in the record, and therefore the appellant has not carried his burden of demonstrating his entitlement to relief. *See Ex parte Barnett*, 424 S.W.3d 809, 811 (Tex. App.—Waco 2014, no pet.); *Turner v. State*, No. 12-09-00388-CR, 2011 WL 686409, at *2 (Tex. App.—Tyler Feb. 28, 2011, no pet.) (mem. op., not designated for publication). We need not address whether a similar disposition is appropriate here because we conclude for other reasons that the trial court did not err in denying the applications.

ANALYSIS

## I.    Appellant may bring his constitutional challenges via pretrial habeas.

Pretrial habeas corpus proceedings are separate criminal actions, and the applicant has the right to an immediate appeal before trial begins. *Greenwell v. Court of Appeals for the Thirteenth Judicial Dist.*, 159 S.W.3d 645, 650 (Tex. Crim. App. 2005). Pretrial habeas, followed by an interlocutory appeal, is an extraordinary remedy, and we must be careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that should not be put before appellate courts at the pretrial stage. *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010). A claim is cognizable in a pretrial writ of habeas corpus if, resolved in the defendant's favor, it would deprive the trial court of the power to proceed and result in the appellant's immediate release. *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006) (citing *Ex Parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001).

A claim that a statute is unconstitutional on its face may be raised by pretrial writ of habeas corpus because the invalidity of the statute would render the charging instrument void. *Ex parte Weise*, 55 S.W.3d at 620. Although pretrial habeas can be used to bring a facial challenge to the constitutionality of the statute, it may not be used to advance an "as applied" challenge. *Ex parte Ellis*, 309 S.W.3d at 79.

The State argues that we may not address appellant's three issues because they are in fact "as applied" constitutional challenges and thus not cognizable in a pretrial application for writ of habeas corpus. We disagree. In his three issues, appellant argues that the statute is facially invalid because it is a content-based restriction on speech and is both overbroad and vague. If we resolved these arguments in appellant's favor, the trial court would be deprived of the power to

proceed and appellant would be released. *See Ex parte Lo*, 424 S.W.3d 10, 16–27 (Tex. Crim. App. 2013) (concluding statute at issue was overbroad, content-based restriction on speech and remanding case for trial court to dismiss indictment); *Ex parte Ellis*, 309 S.W.3d at 86 (noting that "[w]hen a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even if the law has some valid application" and addressing appellant's vagueness challenges); *see also Long v. State*, 931 S.W.2d 285, 297 (Tex. Crim. App. 1996) (holding statutory provision unconstitutionally vague on its face and remanding case to trial court for order dismissing prosecution). Accordingly, appellant properly raised his challenges in pretrial applications for writ of habeas corpus, and we consider whether the trial court erred in denying the applications.

## II. Section 46.02(a-1)(2)(C) is not subject to strict scrutiny as a speech regulation or restriction on freedom of association.

In his first issue, appellant argues that the statute is facially invalid under the First Amendment to the United State Constitution because it (1) attaches criminal sanctions to the otherwise-lawful behavior of displaying a sign or symbol, and (2) restricts freedom of association.

### A. Standard of review and applicable law

In general, we review a trial court's ruling on an application for writ of habeas corpus using an abuse-of-discretion standard, and we view any evidence in the light most favorable to that ruling and defer to implied factual findings supported by the record. *Le v. State*, 300 S.W.3d 324, 327 (Tex. App.—Houston [14th Dist.] 2009, no pet.). Whether a statute is facially constitutional, however, is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d at 14.

We usually begin analyzing a constitutional challenge with the presumption that the statute is valid and that the Legislature has not acted unreasonably or

4

arbitrarily. *Rodriguez v. State*, 93 S.W.3d 60, 69 (Tex. Crim. App. 2002). The burden to establish the statute's unconstitutionality rests upon the party mounting the challenge. *Id.* The First Amendment's prohibition of laws "abridging the freedom of speech," however, limits the government's power to regulate speech based on its substantive content. U.S. Const. amend. I; *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218, 2226 (2015). When the government does so, the usual presumption of constitutionality afforded legislative enactments is reversed. *United States v. Playboy Entm't Group, Inc.*, 529 U.S. 803, 817 (2000). Content-based regulations—meaning those that distinguish favored from disfavored speech based on the idea or message expressed—are presumptively invalid, and the government bears the burden to rebut that presumption. *Ex parte Lo*, 424 S.W.3d at 15.

Whether the provision is content-neutral or content-based dictates the level of scrutiny that we will apply. *Martinez v. State*, 323 S.W.3d 493, 504–05 (Tex. Crim. App. 2010). We apply strict scrutiny to regulations that suppress, disadvantage, or impose differential burdens upon speech because of its content. *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 642 (1994). Such a regulation may be upheld only if it is necessary to serve a compelling state interest and employs the least speech-restrictive means to achieve its goal. *Ex parte Lo*, 424 S.W.3d at 15. Other types of regulations receive intermediate scrutiny, including content-neutral regulations of the time, place, and manner of speech, as well as regulations of speech that can be justified without reference to its content. *E.g., Turner Broad. Sys.*, 512 U.S. at 642; *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). These regulations are permissible if they promote a significant governmental interest and do not burden substantially more speech than necessary to further that interest. *McCullen v. Coakley*, 134 S. Ct. 2518, 2534-35 (2014); *Ex*

5

*parte Thompson*, 442 S.W.3d 325, 344 (Tex. Crim. App. 2014).

Although the First Amendment literally protects only speech, courts have held that conduct may "possess sufficient communicative elements to bring the First Amendment into play." *Texas v. Johnson*, 491 U.S. 397, 404 (1989). To determine whether conduct falls within the scope of the First Amendment, courts consider whether an intent to convey a particularized message is present, and whether the likelihood is great that the message will be understood by those who receive it. *Id.*

**B.      The statute's regulation of speech is justified without reference to the content of a sign or symbol.**

Section 46.02(a-1)(2)(C) of the Texas Penal Code provides that a person commits an offense if the person [i] intentionally, knowingly, or recklessly carries on or about his or her person a handgun [ii] in a motor vehicle or watercraft that is owned by the person or under the person's control [iii] at any time in which the person is a member of a criminal street gang as defined by Texas Penal Code section 71.01. Tex. Pen. Code Ann. § 46.02(a-1)(2)(C) (West Supp. 2014). Under section 71.01(d), criminal street gang is defined as "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activities." Tex. Pen. Code Ann. § 71.01(d) (West 2011).

Appellant contends section 46.02(a-1)(2)(C) implicates the First Amendment because it prohibits an individual from carrying a handgun in a vehicle at any time the individual has an identifying sign or symbol. According to appellant, the provision regulates expressive conduct based on its subject matter because a gang's signs, symbols, and attire are intended to convey the gang's existence and presence. Appellant argues that the statute is a content-based

restriction of speech because its application depends on the identifying content of the sign or symbol displayed. Thus, the statute must satisfy strict scrutiny, which appellant contends it cannot do because there are less speech-restrictive means of achieving the State's asserted safety interests. We conclude, however, that the statute is subject to intermediate scrutiny.

As the Supreme Court of the United States has recognized, some regulations of speech or expressive conduct do not fall neatly into either the content-based or content-neutral category. *See City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48 (1986). Typically, "a person possessing a gun has no intent to convey a particular message, nor is any particular message likely to be understood by those who view it." *Nordyke v. King*, 319 F.3d 1185, 1190 (9th Cir. 2003). Of course, the group of persons that this statute prohibits from carrying handguns in vehicles may be defined in part by whether that group has a common identifying sign or symbol. But it is far from clear that this statute regulates handgun possession in a vehicle based on the message expressed by this sign or symbol, particularly given that the sign or symbol need not be used in connection with the gun possession (and may not be used at all if the group has an identifiable leadership). Nor does the statute appear to draw a content-based distinction between different categories of signs or symbols that are sufficiently communicative to be protected by the First Amendment. Instead, it draws a communication-based distinction, covering any common (i.e., shared) sign or symbol that is "identifying."[2]

On the other hand, the Court of Criminal Appeals held that an injunction

---

[2] Although the content of the sign or symbol might need to be examined to determine whether it is identifying, such an examination does not violate the First Amendment. *See Hill v. Colorado*, 530 U.S. 703, 721–23 (2000) (holding statute prohibiting persons from approaching within eight feet to engage in protest, education, or counseling was not subject to strict scrutiny even though cursory examination might be necessary to exclude casual conversation from statute's coverage).

7

prohibiting the use of gang hand signs or other symbols that identify membership in a combination was content-based because it banned the particular message associated with the signs or symbols. *Martinez*, 323 S.W.3d at 497, 505. The court observed, however, that an order "bann[ing] all hand signs" would not be content-based. *Id.* at 505.

Ultimately, we need not determine whether a statute directly regulating "common identifying" signs or symbols would be content-based. In this case, the reference to such signs or symbols is part of a criminal statute regulating handgun possession in vehicles. The Supreme Court has held that "[a] regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others." *Ward*, 491 U.S. at 791. If the regulation is aimed at the "*secondary effects*" that tend to accompany such expression, so that it is "*justified* without reference to the content" of the expression, the regulation will be subject to intermediate scrutiny. *City of Renton*, 475 U.S. at 47–48; *see also R.A.V. v. City of St. Paul, Minn.*, 505 U.S. 377, 389–90 (1992); *Ex parte Thompson*, 442 S.W.3d at 345–46; *Barber*, 111 S.W.3d at 93–95, 100.

Section 46.02(a-1)(2)(C) falls into this category because it is regulating not the direct impact of viewing identifying signs, but the secondary effect of gun violence by gang members who sometimes use such signs. The State has a compelling interest in ensuring the safety of its citizens by eliminating gang violence and other criminal activities. *Martinez*, 323 S.W.3d at 505–06. The justification of controlling such violence is unrelated to any message likely to be expressed by identifying signs. *See Asgeirsson v. Abbott*, 696 F.3d 454, 461–62 (5th Cir. 2012) (holding Texas Open Meetings Act's prohibition on speech concerning public policy in closed meetings was subject to intermediate scrutiny

8

because its purpose was to control secondary effects of closed meetings—such as preventing transparency and encouraging corruption—that are unrelated to public policy messages likely to be expressed in such meetings). Put another way, the identifying content of a common sign is relevant under the statute not because the State disagrees with that content, but because the sign identifies those people whose possession of a handgun in a vehicle is more likely to lead to violent secondary effects.[3] In addition, a person can avoid the statute's incidental limits on use of identifying signs or symbols simply by not carrying a handgun in a vehicle, which confirms that the statute's focus is not on suppressing expression.[4]

For these reasons, we hold appellant's contention that section 46.02(a-1)(2)(C) facially abridges freedom of speech is subject to intermediate scrutiny. Appellant's brief does not challenge the trial court's implied finding that the statute is constitutional under an intermediate scrutiny analysis, so we do not reach that issue.[5]

## C. The statute does not impair freedom of association in a manner requiring strict scrutiny.

Appellant also argues that the statute is subject to strict scrutiny because it impermissibly restricts the First Amendment right to freedom of association and

---

[3] *See Asgeirsson*, 696 F.3d at 461 (observing that statute's focus on speech concerning public policy was relevant because only that speech would have the undesirable secondary effects).

[4] *See Combs v. Tex. Entm't Ass'n*, 347 S.W.3d 277, 287–88 (Tex. 2011) (holding fee imposed on certain clubs was not subject to strict scrutiny as content-based regulation of expression because it was directed at secondary effects of dancing when alcohol is consumed and could be avoided by not serving alcohol).

[5] At oral argument, appellant did contend that the statute fails intermediate scrutiny and also argued for the first time that the term "associate" is unconstitutionally vague because it is distinct from the term "engage" used in Texas Penal Code section 46.02(a-1)(2)(A). We decline to address these issues. *See* Tex. R. App. P. 38.1(f), 39.2; *Moore v. State*, 165 S.W.3d 118, 121 n.1 (Tex. App.—Fort Worth 2005, no pet.).

assembly.  We disagree.  The First Amendment protects freedom of association in two distinct contexts, neither of which is implicated here.  One line of cases involves certain "intimate human relationships [that] must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Roberts v. United States Jaycees*, 468 U.S. 609, 617–18 (1984).  These types of relationships "are those that attend the creation and sustenance of a family." *Id.* at 617–20 (discussing freedom of association in this context).  Another line of cases involves "a right to associate for the purpose of engaging in those activities protected by the First Amendment—speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618.  "[I]mplicit in the right to engage in activities protected by the First Amendment [is] a corresponding right to associate with others in pursuit of a wide variety of political, social, economic, educational, religious, and cultural ends." *Id.* at 622 (citing cases).  This right of "expressive association" does not provide generalized protection for "social association," however. *City of Dallas v. Stanglin*, 490 U.S. 19, 25 (1989).

Section 46.02(a-1)(2)(C) does not implicate the constitutional right to freedom of association in either of these senses.  The statute does not address family relationships at all.  Nor does it prevent gang members from gathering to engage in any activities protected by the First Amendment, including the use of identifying signs or symbols.  Indeed, unlike other statutes, it does not even prevent them from "associat[ing] in the commission of criminal activities." Tex. Penal Code Ann. § 71.01(d).  Rather, this statute prevents people from carrying handguns in their vehicles—an activity that, as explained earlier, does not convey a particular message—if they also regularly associate in committing criminal activities. *See* Tex. Penal Code Ann. §§ 46.02(a-1)(2)(C), 71.01(d).  Because

10

simply carrying a handgun in a vehicle is not, on its face, an expressive activity, we hold that the statute does not infringe the First Amendment right to freedom of association in any manner that requires the application of strict scrutiny. *See Osterberg v. Peca*, 12 S.W.3d 31, 47 (Tex. 2000) (observing that infringement on type of freedom to associate "that is instrumental to protecting First Amendment freedoms" is "subject to the closest scrutiny"); *see also Stanglin*, 490 U.S. at 25 (applying rational-basis scrutiny under Equal Protection Clause when regulation did not infringe rights of intimate or expressive association). Again, appellant does not argue in his brief that the statute fails to withstand a lower level of scrutiny, so we do not reach that question. We overrule appellant's first issue.

## III. The statute is neither overbroad nor vague when correctly construed.

In his second issue, appellant argues that section 46.02(a-1)(2)(C) incorporates an unconstitutionally overbroad definition of "criminal street gang" and uses the overbroad term "member" of such a gang in defining who may not carry a handgun in a vehicle. In his third issue, appellant asserts that the terms "member" and "criminal street gang" are also unconstitutionally vague. We address these issues together.

### A. Overbreadth

A statute or ordinance is facially overbroad if it reaches a substantial amount of constitutionally protected conduct, such as speech or conduct protected by the First Amendment. *Duncantell v. State*, 230 S.W.3d 835, 843 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd); *see Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494 (1982). The overbreadth doctrine is "strong medicine" to be employed with hesitation and only as a last resort. *Ex parte Thompson*, 442 S.W.3d at 349. A statute will not be invalidated for overbreadth merely because it is possible to imagine some unconstitutional applications. *See*

11

*Members of City Council of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 800–01 (1984). Laws that inhibit the exercise of First Amendment rights will be held facially invalid only if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep. *Broadrick v. Oklahoma*, 413 U.S. 601, 612–615 (1973).

The first step in overbreadth analysis is to construe the challenged statute, because it is impossible to determine whether a statute reaches too far without first knowing what the statute covers. *United States v. Williams*, 553 U.S. 285, 293 (2008). In determining whether a law is unconstitutionally overbroad or vague, we interpret a statute in accordance with the plain meaning of its language unless the language is ambiguous or the plain meaning leads to an absurd result. *Duncantell*, 230 S.W.3d at 842–43. Words and phrases shall be read in context and construed according to the rules of grammar and usage. Tex. Gov't Code Ann. § 311.011 (West 2013); Tex. Penal Code Ann. § 1.05(b) (West 2011) (making section 311.011 applicable to the Texas Penal Code). When there are different ways the statute can be construed, we apply the interpretation that sustains its validity. *See State v. Carmaco*, 203 S.W.3d 596, 599 (Tex. App.—Houston [14th Dist.] 2006, no pet.). The burden rests upon the person challenging the statute to establish its unconstitutionality. *Rodriguez*, 93 S.W.3d at 69. We must uphold the statute if we can determine a reasonable construction that will render it constitutional. *Duncantell*, 230 S.W.3d at 843.

### B. Vagueness

When First Amendment freedoms are not implicated, a facial vagueness challenge can succeed only if it is shown that the law is unconstitutionally vague in all of its applications. *Ex parte Ellis*, 309 S.W.3d at 80. A statute is vague if persons of common intelligence are incapable of deciphering what conduct is

12

prohibited. *See Watson v. State*, 369 S.W.3d 865, 870 (Tex. Crim. App. 2012).

When a vagueness challenge involves First Amendment considerations, a criminal law may be held facially invalid even if the law has some valid applications. *Ex parte Ellis*, 309 S.W.3d at 86. A criminal law that implicates First Amendment freedoms must: (1) be sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) establish determinate guidelines for law enforcement, and (3) be sufficiently definite to avoid chilling protected expression. *Id.* The law need not be mathematically precise; it need only give fair warning in light of common understanding and be sufficiently definite to avoid the possibility of arbitrary and erratic enforcement. *Kfouri v. State*, 312 S.W.3d 89, 92 (Tex. App.—Houston [14th Dist.] 2010, no pet.).

**C.    Discussion**

When a party challenges a statute as both overbroad and vague, we address the overbreadth challenge first. *See Duncantell*, 230 S.W.3d at 843. Appellant asserts that the statutory definition of the term "criminal street gang," which section 46.02(a-1)(2)(C) borrows from section 71.01(d) of the Penal Code, is overbroad and criminalizes constitutionally protected conduct. Appellant argues that the term "criminal street gang" means three or more persons having either (1) a common identifying sign, (2) a common identifying symbol, or (3) an identifiable leadership who continuously or regularly associate in the commission of criminal activities. Under appellant's interpretation, three or more persons qualify as a criminal street gang so long as they have a common identifying sign or a common identifying symbol. The three or more persons need not, in appellant's view, continuously or regularly associate in the commission of criminal activities. Appellant therefore submits that the statute "prohibits a wide array of

constitutionally protected conduct by prohibiting groups of people from meeting, congregating, or assembling, and having an identifying sign or symbol." For example, according to appellant, this prohibition necessarily applies to members of the Boy Scouts of America.

We conclude that appellant's arguments rely on an incorrect construction of the statute. Grammatically, the group of words "having a common identifying sign or symbol or an identifiable leadership" is a participial phrase acting as an adjective that modifies the noun "persons." Thus, three or more persons meet the definition of a criminal street gang only when they—in addition to having a common identifying sign, a common identifying symbol, or an identifiable leadership—continuously or regularly associate in the commission of criminal activities.[6] The statute does not apply to three or more persons solely because they have a common identifying sign or symbol. Furthermore, as explained in Part II, section 46.02(a-1)(2)(C) does not prohibit gathering with other members of a gang or displaying any common identifying signs or symbols.

Appellant argues that this interpretation is improper because it adds language to the statute. But our interpretation does not add language; it gives the statute its proper grammatical interpretation. Moreover, appellant's interpretation would lead to an absurd and—according to appellant—unconstitutional result. As appellant acknowledges in his brief, we should not interpret the language of a statute to lead to such results. *Duncantell*, 230 S.W.3d at 843. Instead, when a statute can be construed in different ways, we apply the interpretation that sustains its validity. *See Carmaco*, 203 S.W.3d at 599. Unlike appellant's interpretation,

---

[6] Other grammatical cues support this construction. For example, the parallel use of the articles "a" and "an," together with the conjunction "or," suggests that an identifiable leadership is part of the participial phrase. In addition, leadership is a collective noun that generally would take a singular verb. But the following verb—associate—is plural, which indicates that it is referring to association not by leadership but by persons (a plural noun).

14

our construction of the statute both gives effect to its plain language and avoids an interpretation that would lead to an absurd result.[7]

Appellant also argues that even our construction of the term "criminal street gang" is impermissibly overbroad. Appellant posits an example involving a political party with an identifying symbol that engages in voter fraud every other election. Appellant argues that each element of the statute is satisfied, and thus the members of the political party that engage in voter fraud qualify as a "criminal street gang." Even assuming appellant is correct, he fails to explain why such an application makes the statute overbroad and cites no authority for the proposition that voter fraud is constitutionally protected conduct. *See Duncantell*, 230 S.W.3d at 844 ("Appellant has cited no authority, and we are aware of none, holding that conduct, which a person knew or should have known would interrupt, disrupt, impede, or interfere with a peace officer performing a duty imposed by law, such as investigating an accident or arresting a criminal suspect, is expressive conduct protected by the First Amendment. Accordingly, we hold that [such] conduct . . . is not expressive conduct protected by the First Amendment."). Appellant therefore has not satisfied his burden of demonstrating that the impermissible applications of the law, if any, are substantial when judged in relation to the statute's plainly legitimate sweep. *Broadrick*, 413 U.S. at 612–615. We hold the term "criminal street gang" is not overbroad on its face.

Next, appellant contends that the term "member" in section 46.02(a-1)(2)(C)

---

[7] Appellant also argues the statute is ambiguous and that the rule of lenity resolves the ambiguity in his favor. Appellant has not addressed what interpretation should result from an application of the rule of lenity in this case, however, or explained why lenity would not favor the narrower interpretation we adopt today over the broader interpretation appellant advocates in other parts of his brief. The State responds that the rule of lenity does not apply in this case because the Texas Penal Code does not require its provisions to be strictly construed. *See* Tex. Pen. Code Ann. § 1.05(a) (West 2011). We need not resolve these arguments because the statute is not ambiguous.

is overbroad because the statute punishes any member of a criminal street gang who knowingly carries a handgun in his vehicle, regardless of whether the member knows of the gang's criminal activities or carries the gun with the specific intent to further those activities. Appellant argues that if three or more individuals have a common identifiable leadership that continuously or regularly associates in the commission of criminal activities, the statute reaches those individuals. According to appellant, a member of a criminal street gang carrying a handgun in his vehicle can be punished under the statute even if he participates solely in lawful conduct by the gang. Furthermore, a member need not even be aware of the gang's criminal activities in order to be punished.

We conclude that the term "member" is not unconstitutionally overbroad. Appellant's arguments that a defendant need not be involved in or even aware of the gang's criminal activities rely on his incorrect construction of the statute. The term "member" in section 46.02(a-1)(2)(C) derives its content from the definition of "criminal street gang" contained in section 71.01(d). Read together, these provisions indicate that a gang "member" must be one of the three or more persons who continuously or regularly associate in the commission of criminal activities. *See, e.g.*, *Jackson v. State*, 314 S.W.3d 118, 127–28 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (discussing cases and concluding "specific evidence of crimes not committed by appellant was of very little probative value, if any, to show appellant's mental state to act as part of a criminal street gang" and thus the evidence should have been excluded under Rule 403). When construed in this way, appellant has not shown that the statute reaches a substantial amount of constitutionally protected conduct. *Cf. Lucario v. State*, 677 S.W.2d 693, 698–99 (Tex. App.—Houston [1st Dist.] 1984, no writ) (holding statute criminalizing intentional participation in combination that collaborates in carrying on criminal

16

activity did not prohibit constitutionally protected conduct and was not vague).

Finally, turning to appellant's vagueness challenge, we conclude that it is likewise premised upon his incorrect construction of the statute. Appellant contends the statute does not specify what conduct makes an individual a "member" of a criminal street gang, and therefore it does not provide a person of ordinary intelligence a reasonable opportunity to know what conduct is prohibited. Appellant argues that the meaning of the term "member" cannot be derived from the definition of "criminal street gang" under section 71.01(d) because section 46.02(a-1)(2)(C) does not limit its application solely to those members displaying the gang's sign or symbol. Rather, the statute also applies to those individuals with a common identifying leadership where only the leadership—but not the individuals—continuously or regularly associates in the commission of criminal activities. In appellant's view, the statute thus proscribes conduct that lacks any ascertainable rules or guidelines to govern its enforcement. We conclude that these arguments fail when the statute is correctly construed.

To support his arguments, appellant relies on *Lanzetta v. State of New Jersey*, 306 U.S. 451 (1939), a case in which the Supreme Court of the United States addressed the constitutionality of a statute that provided:

> Any person not engaged in any lawful occupation, known to be a member of any gang consisting of two or more persons, who has been convicted at least three times of being a disorderly person, or who has been convicted of any crime, in this or in any other State, is declared to be a gangster.

*Id.* at 452. Appellant points to a portion of *Lanzetta* in which the Court states that the expression "known to be a member" is ambiguous. *Id.* at 458. The Court took issue with the phrase because the word "known" made it unclear whether "actual or putative association [was] meant," and "the statute fail[ed] to indicate what constitutes membership or how one may join a 'gang.'" *Id.*

17

*Lanzetta* is not on point because the statute here requires actual membership in a criminal street gang. In addition, as discussed above, the statute does not apply to those with a common identifying leadership when only the leadership continuously or regularly associates in the commission of criminal activities. Rather, the term "member" refers to one of the three or more persons who—in addition to having a common identifying sign, a common identifying symbol, or an identifiable leadership—continuously or regularly associate in the commission of criminal activities. So understood, the term "member" is not so vague that people "of common intelligence must necessarily guess at" what conduct is prohibited. *Rodriguez v. State*, 47 S.W.3d 86, 92 (Tex. App.—Houston [14th Dist.] 2001, pet. ref'd).

Appellant next contends that the statute impermissibly delegates its application to gang members because they decide what criminal activities to associate in committing on a continuous or regular basis.[8] According to appellant, "it is the criminal street gang's decision—and not the Legislature's—that will determine, at some time in the indefinite future, the conduct sought to be prohibited by § 46.02(a-1)(2)(C)." Appellant argues that "[j]ust as a legislative body may not delegate basic policy decisions to prosecutors and judges, such matters should similarly not be delegated to the very criminals the penal statute seeks to restrict."

We conclude that these arguments do not provide independent support for appellant's vagueness challenge. Every criminal statute, if viewed in the fashion appellant suggests, would impermissibly delegate legislative policy decisions

---

[8] In this portion of his brief, appellant argues in a footnote that the phrase "continuously or regularly" lacks a "precise definition" because it depends upon the type of criminal activity engaged in by the criminal street gang. But "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Ex parte Ellis*, 309 S.W.3d at 86 (citing *Williams*, 553 U.S. at 304).

because it is always the criminal's decision "that will determine, at some time in the indefinite future," the statute's application. A statute criminalizing murder is not unconstitutional merely because it "delegates" the state's policy against murder to "the very criminals the penal statute seeks to restrict."

Appellant also argues that ambiguity in the term "criminal street gang," together with uncertainty regarding what conduct constitutes gang membership, impermissibly provides law enforcement with unfettered discretion to arrest individuals under the statute. As we have explained, however, a correct construction of the statute removes any ambiguity in the term "criminal street gang" and clarifies what conduct makes an individual a "member" of the gang.

The Court of Criminal Appeals faced a similar issue in *Martinez v. State*, 323 S.W.3d at 497. The trial court had enjoined the defendant, a member of a street gang, from engaging in certain activities, including "[u]sing or making words, phrases, physical gestures, or symbols, commonly known as gang hand signs or engaging in other forms of communication which the Defendant knows, describes, refers, or identifies members of the combination, or wearing clothes that particularly identify membership within the combination." *Id.* at 496–97. The Court of Criminal Appeals "reject[ed] the notion that [this] provision . . . permitted arbitrary and discriminatory enforcement." *Id.* at 507–08. As the court explained,

> we have recognized the ability of law enforcement to know and determine gang affiliation by observing an individual's clothing or tattoos. We therefore conclude that, under these circumstances, it is reasonable to defer to the district court judge's determination that law enforcement patrolling the defined [area], based on their training and experience, would be able to recognize the hand gang signs and clothing associated with gangs in the area and to apply the provision in a non-arbitrary and non-discriminatory fashion.

*Id.* at 508 (footnotes omitted).

For similar reasons, we conclude that section 46.02(a-1)(2)(C) does not provide law enforcement with unfettered discretion to arrest individuals or otherwise authorize and encourage arbitrary and discriminatory enforcement. Moreover, law enforcement may not arrest a person under this section merely because they recognize gang signs or symbols. Instead, law enforcement must also determine whether the person is carrying a handgun in a vehicle and whether he or she continuously or regularly associates in the commission of criminal activity. These tasks are well within ordinary law enforcement duties, and the statutory requirements are sufficiently specific to be applied in a non-arbitrary and non-discriminatory fashion.

Appellant relies on *City of Chicago v. Morales*, 527 U.S. 41 (1999), to support his vagueness argument. The ordinance at issue in *Morales* provided:

> Whenever a police officer observes a person whom he reasonably believes to be a criminal street gang member loitering in any public place with one or more other persons, he shall order all such persons to disperse and remove themselves from the area. Any person who does not promptly obey such an order is in violation of this section.

*Id.* at 65. The plurality concluded that the term "loiter"—defined as "to remain in any one place with no apparent purpose"—was unconstitutionally vague due to the "uncertainty about . . . what loitering is covered by the ordinance and what is not." *Id.* at 56–57 (plurality op.). In addition, a majority of the Court concluded that the ordinance did not establish minimal guidelines to govern law enforcement because it applied to loitering with no harmful purpose and to non-gang members as well as suspected gang members. *Id.* at 60, 62–63.

Appellant argues that like the ordinance in *Morales*, the statute here gives law enforcement unfettered discretion because it requires no harmful purpose in carrying a handgun and sanctions an ambiguous class of people. This argument

20

fails under a correct construction of section 46.02(a-1)(2)(C). "Member" derives its content from the definition of "criminal street gang." To be a member, an individual must be one of three or more persons with a common identifying sign, symbol, or identifiable leadership and must also continuously or regularly associate in the commission of criminal activities. Therefore, law enforcement cannot "decide arbitrarily which members of the public" will be subject to the statute. *Id.* at 58 (plurality op.).

For these reasons, we conclude that even if the statute implicates the First Amendment, a correct construction demonstrates that the statute (1) is sufficiently clear to afford a person of ordinary intelligence a reasonable opportunity to know what is prohibited, (2) establishes determinate guidelines for law enforcement, and (3) is sufficiently definite to avoid chilling any protected expression. *Ex parte Ellis*, 309 S.W.3d at 86. We therefore hold the statute is not unconstitutionally vague on its face. We overrule appellant's second and third issues.

## CONCLUSION

Having overruled appellant's issues, we affirm the order of the trial court denying appellant's pretrial applications for writ of habeas corpus.

/s/     J. Brett Busby
         Justice

Panel consists of Justices Jamison, Busby, and Brown.
Publish — TEX. R. APP. P. 47.2(b).

21