**Reversed and Remanded in No. 14-21-00757-CR, Reversed and Rendered in No. 14-21-00758-CR, and Opinion filed December 13, 2022.**



In The

# Fourteenth Court of Appeals

---

**NO. 14-21-00757-CR**
**NO. 14-21-00758-CR**

---

**THE STATE OF TEXAS, Appellant**

**V.**

**LUIS FERNANDO ZUNIGA, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 7**
**Harris County, Texas**
**Trial Court Cause Nos. 2336003 & 2386601**

---

## OPINION

In these appeals from two separate judgments granting habeas corpus relief, the question presented is whether the applicant carried his burden of showing that a statute was unconstitutionally vague on its face. The trial court concluded that the applicant satisfied his burden. We disagree with that conclusion and reverse both of the trial court's judgments.

# BACKGROUND

These appeals concern Section 545.157 of the Texas Transportation Code, which is otherwise known as the Move Over Act. *See* Act effective Sept. 1, 2003, 78th Leg., R.S., ch. 327, § 1, 2003 Tex. Gen. Laws 1401, 1401. The critical portions of the Act provide as follows:

   (a)  This section applies only to . . . a stationary authorized emergency vehicle using visual signals . . . ;

   (b)  On approaching a vehicle described by Subsection (a), an operator, unless otherwise directed by a police officer, shall:

      (1)  vacate the lane closest to the vehicle when driving on a highway with two or more lanes traveling in the direction of the vehicle; or

      (2)  slow to a speed not to exceed:

         (A)  20 miles per hour less than the posted speed limit when the posted speed limit is 25 miles per hour or more; or

         (B)  five miles per hour when the posted speed limit is less than 25 miles per hour.

The typical penalty for a violation of the Act is just a fine, but when a violation results in bodily injury, the violator can face criminal liability for a Class B misdemeanor, which carries a maximum punishment of six months' confinement and a fine of $2,000. *See* Tex. Transp. Code § 545.157(c); Tex. Penal Code § 12.22.

Zuniga was criminally charged with violating the Act. The charging instrument alleged that a third party suffered bodily injury, without any particular details as to the nature of the injury or the circumstances leading up to its occurrence.

Zuniga filed a pretrial application for writ of habeas corpus, arguing that the Act was impermissibly vague on its face because it does not define the term "approaching." Without such a definition, or any other statutory guidance as to when

2

the duty arises to move over or reduce speed, Zuniga claimed that he had no notice of what was required of him to avoid criminal responsibility. He also argued that the Act encouraged arbitrary and discriminatory enforcement through its use of indefinite language.

Zuniga filed his application in the same cause number as the charging instrument, which was not the correct procedure. He later filed the application in a new cause number, separate and apart from the charging instrument, which was the correct procedure. *See Ex parte Fairchild-Porche*, 638 S.W.3d 770, 778 (Tex. App.—Houston [14th Dist.] 2021, no pet.) ("Pretrial habeas-corpus proceedings are separate criminal actions that should be filed under a cause number different from the cause number of the underlying criminal prosecution."). The State opposed habeas corpus relief, but the trial court granted Zuniga's application and entered judgments in both cause numbers dismissing the charging instrument.

The State now appeals from those separate judgments.

## ANALYSIS

### I. Standard of Review

Zuniga applied for habeas corpus relief on the asserted ground that the Act was unconstitutional on its face. This ground is also known as a facial challenge, and it raised a pure question of law. *See Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013). Because a trial court is in no better position than this court to resolve a pure question of law, the trial court's ruling is not entitled to deference, and we consider the facial challenge de novo. *Id.*

### II. Vagueness Doctrine

A vagueness argument implicates two constitutional concerns. *See United States v. Davis*, 139 S. Ct. 2319, 2325 (2019). The first concern is the due process

3

of law, which requires that statutes give people of ordinary intelligence fair notice of what the law demands of them. *Id.* Vague laws contravene this basic tenet by failing to provide such notice. *Id.* The second concern is the separation of powers. *Id.* In our representative democracy, only the legislature can "make an act a crime," and vague laws threaten this rule insofar as they delegate responsibility for defining crimes to unaccountable police, prosecutors, and judges. *Id.* To protect these constitutional concerns, the courts have developed a doctrine that a vague law is void and may not be enforced. *Id.*

## III.    The traditional rule still applies.

Whenever a party asserts a facial challenge to a statute on the grounds that the statute is impermissibly vague, we presume that the statute is constitutional, which means that the burden rests on the challenger to establish its unconstitutionality. *See Ex parte Smith*, 441 S.W.2d 544, 547 (Tex. Crim. App. 1969).

A survey of the case law indicates that there might be some uncertainty as to the precise scope of the challenger's burden.

The traditional rule has been that the challenger has the burden of showing that the statute is impermissibly vague in all of its applications. *See Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 494–95 (1982). This is a heavy burden. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) ("A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid."). If the record reveals that the challenger engaged in conduct that was clearly proscribed, then the challenger cannot establish that the statute is invalid even though it might be vague as applied to the conduct of others. *See Village of Hoffman Estates*, 455 U.S. at 495.

4

But this traditional rule has not always been followed. The Supreme Court has held that if the statute implicates the First Amendment or any other constitutionally protected conduct, then the challenger is not required to demonstrate that the statute is impermissibly vague in all of its applications. *See United States v. Williams*, 553 U.S. 285, 304 (2008) ("Although ordinarily a plaintiff who engages in some conduct that is clearly proscribed cannot complain of the vagueness of the law as applied to the conduct of others, we have relaxed that requirement in the First Amendment context, permitting plaintiffs to argue that a statute is overbroad because it is unclear whether it regulates a substantial amount of protected speech.").

The Supreme Court also departed from the traditional rule in a recent trio of cases, none of which involved the First Amendment or any other constitutionally protected conduct. The first case in this trio was *Johnson v. United States*, 576 U.S. 591 (2015), which concerned a challenge to the Armed Career Criminal Act, a federal sentencing statute that enhanced the punishment of a defendant if he had previously been convicted three or more times of a violent felony. *Id.* at 593. The statute defined the term "violent felony" with a series of exemplar crimes, followed next by an open-ended residual clause that referred to any offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 594. Deciding whether that residual clause encompassed a crime required a lower court to use a framework known as the categorical approach. *Id.* at 596. Under that categorical approach, a lower court had to imagine what sort of conduct that the crime involved "in the ordinary case"—as opposed to considering the particular facts of the underlying conviction at issue—and then the court had to assess whether that abstraction presented a serious potential risk of physical injury to another. *Id.* Because this categorical approach was attended by uncertain and unreliable factors, the Supreme Court held that the residual clause denied fair notice to defendants and

invited arbitrary enforcement by judges. *Id.* at 597. The Supreme Court accordingly invalidated the residual clause on vagueness grounds, despite having acknowledged that the clause could have some "straightforward" applications. *Id.* at 602.

In *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018) and *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court invalidated two more residual clauses in other federal statutes. Both of those opinions followed the reasoning previously applied in *Johnson*.

The Supreme Court did not expressly disavow the traditional rule in any of the trio of cases concerning residual clauses. However, in *Johnson*, the Supreme Court made the following statement that could be construed as casting doubt on the traditional rule: "In all events, although statements in some of our opinions could be read to suggest otherwise, our *holdings* squarely contradict the theory that a vague provision is constitutional merely because there is some conduct that clearly falls within the provision's grasp." *See Johnson*, 576 U.S. at 602 (emphasis in original).

The Court of Criminal Appeals highlighted this statement in *State v. Doyal*, 589 S.W.3d 136 (Tex. Crim. App. 2019), where it suggested that the traditional rule from earlier opinions may have been disavowed. *Id.* at 144 n.33 (commenting that the Supreme Court "appears to have disavowed all prior conflicting opinions to the extent of any conflict"). However, the Court of Criminal Appeals noted that the Supreme Court failed to identify any earlier opinions that were no longer to be treated as precedent. *Id.*

That omission is significant because one of the leading opinions that recited the traditional rule was *Village of Hoffman Estates*, which was cited in the dissenting opinion in *Johnson. See Johnson*, 576 U.S. at 636 (Alito, J., dissenting). But in *Dimaya*, which was the second case in the trio beginning with *Johnson*, the Supreme

Court cited to *Village of Hoffman Estates*, without ever noting that any part of it had been overruled or abrogated. *See Dimaya*, 138 S. Ct. at 1212–13.

A division in the lower courts of this state has created even more uncertainty as to the status of the traditional rule. In the wake of *Johnson*, our court has continued to apply the traditional rule in at least two cases. *See Ex parte Gonzalez*, 525 S.W.3d 342, 349 (Tex. App.—Houston [14th Dist.] 2017, no pet.) ("Unless First Amendment freedoms are implicated, a facial vagueness challenge can succeed only if it is shown that the law is unconstitutionally vague in all of its applications."); *Ex parte Flores*, 483 S.W.3d 632, 643 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) ("When First Amendment freedoms are not implicated, a facial vagueness challenge can succeed only if it is shown that the law is unconstitutionally vague in all of its applications."). Both of those cases were decided without any discussion of *Johnson* or its progeny.

By contrast, a separate court has held that the traditional rule is no longer in effect. *See Ex parte Jarreau*, 623 S.W.3d 468, 472 (Tex. App.—San Antonio 2020, pet. ref'd) ("However, recent decisions by the United States Supreme Court and the Texas Court of Criminal Appeals indicate that when a penal statute is challenged for vagueness it is unnecessary to establish that the statute operates unconstitutionally in all possible circumstances.").

Adding to this uncertainty is another case from the Court of Criminal Appeals, which held—after *Doyal*—that the challenger in a facial challenge must establish that there is no set of circumstances under which the statute would be valid. *See Allen v. State*, 614 S.W.3d 736, 740–41 (Tex. Crim. App. 2019) ("Thus, if there is any possible constitutional application of the statute, then Appellant's facial challenge fails."). That case did not specifically involve a vagueness challenge, but

7

it did involve a challenge arising under the separation of powers, which is one of the two constitutional concerns upon which the vagueness doctrine was created.

Against this legal backdrop, the parties dispute whether the traditional rule should still apply in this case. The State believes that it should apply because the Move Over Act does not implicate the First Amendment or any other constitutionally protected freedom. The State also believes that the trio of cases beginning with *Johnson* represents a narrow exception to the traditional rule when the facial challenge involves a residual clause, which is not the situation here. Zuniga, on the other hand, believes that the traditional rule should not apply and that he had no burden to demonstrate that the Act operates unconstitutionally in all of its applications.

We feel bound to follow the traditional rule, and for three reasons.

First, the Supreme Court has not yet expressly disavowed the traditional rule in all facial vagueness challenges. *See Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions.").

Second, the Court of Criminal Appeals did not repudiate the traditional rule in *Doyal* either. That case involved a statute that implicated the First Amendment, and thus, the facial challenge there triggered a recognized exception to the traditional rule.

And third, we applied the traditional rule in *Gonzalez* and *Flores*, and we must continue to apply it out of respect for *stare decisis*.

8

We accordingly hold that Zuniga could not obtain habeas corpus relief unless he showed that the Act is impermissibly vague in all of its applications.

## IV.   Zuniga has not shown that the Act is impermissibly vague in all of its applications.

Zuniga did not argue in his application that there were no set of circumstances in which the Act could be lawfully applied. Instead, he argued that the word "approaching" was impermissibly vague because it lacked a statutory definition. He also criticized the Act because it permitted law enforcement to decide unilaterally and arbitrarily when an approaching driver's duty arose to move over or reduce his speed. And he emphasized in particular that the Act provided "no guidance to law enforcement on how close is too close."

Zuniga seems to argue that the Act is impermissibly vague because a driver has no way of knowing when exactly he is supposed to move over or slow down. This argument would raise interesting questions in an as-applied challenge if the evidence established that a driver was stopped for violating the Act *during* his approach on a stationary authorized emergency vehicle, but *before* the driver had actually passed the vehicle—or alternatively, if the driver moved over or slowed down at some point *before* he passed the vehicle, yet he was still stopped *after* he had passed the vehicle. We need not determine at this time whether the Act is too vague to apply in these situations, because there is a different set of facts in which the Act would clearly have a valid application—one in which the driver took no safety precautions at all and he was stopped *after* he had already passed the stationary authorized emergency vehicle. In that different situation, the passing driver had necessarily been an approaching driver, and if the driver had totally failed to either move over or reduce his speed before passing, then the driver would be criminally responsible under the Act, even though the Act provides no particularized

9

guidance as to when during his approach the driver was supposed to move over or slow down. Because this factual scenario would support at least one valid application of the Act, Zuniga's facial challenge cannot succeed.

## V.     Even if the traditional rule did not apply, the outcome would be the same.

Assuming for the sake of argument that Zuniga did not have to demonstrate that the Act was unconstitutional in all of its applications, we would still conclude that the Act is not vague on its face.

The test for vagueness is not whether the words of a statute are specifically defined. *See Engelking v. State*, 750 S.W.2d 213, 215 (Tex. Crim. App. 1988). Rather, the test is whether the words are so indefinite that a person of ordinary intelligence would have no reasonable opportunity to know what conduct was prohibited or required. *Id.*

When assessing the words of a statute, we begin with their plain meaning. *See Wagner v. State*, 539 S.W.3d 298, 306 (Tex. Crim. App. 2018). The statute here uses the word "approaching." Though not defined in the statute itself, the word "approach" has a plain meaning of "come near or nearer to (someone or something) in distance." *See* New Oxford American Dictionary 77 (Angus Stevenson & Christine Lindberg eds., 3d ed. 2010). As applied to the Act, that plain meaning requires a driver to move over or reduce his speed as the driver comes near a stationary authorized emergency vehicle.

Zuniga contends that this meaning is vague because there is no quantifiable metric to assess nearness.

The legislature has given such metrics in some statutes containing the word "approach," or one of its grammatical variants. *See, e.g.*, Tex. Transp. Code § 545.056 (a driver may not drive to the left side of a roadway when "approaching

10

within 100 feet of an intersection or railroad grade crossing"); Tex. Transp. Code § 545.302 (a driver may not stand or park a vehicle "within 30 feet on the approach to a flashing signal"). In other statutes, the legislature has given only descriptive guidance, rather than quantifiable metrics. *See, e.g.*, Tex. Transp. Code § 552.003 (a driver must yield the right-of-way to a pedestrian in a crosswalk if the pedestrian is "approaching so closely from the opposite half of the roadway as to be in danger"); Tex. Transp. Code § 545.156 (a driver must yield the right-of-way "on the immediate approach of an authorized emergency vehicle using audible and visual signals").

The Move Over Act does not contain a quantifiable metric, but a statute can survive a vagueness challenge even if the statute lacks "mathematical certainty" and "meticulous specificity." *See Grayned v. City of Rockford*, 408 U.S. 104, 110 (1972). The Act here is valid on its face because a person of ordinary intelligence would still know what was required of him—i.e., that he should move over or slow down before passing a stationary emergency vehicle. A specific distance measurement would not be necessary or especially helpful because the ordinary driver does not have the tools needed to safely measure the distance in front of him while driving, especially when driving at highway speeds. *Cf. State v. Holcombe*, 187 S.W.3d 496, 501 n.17 (Tex. Crim. App. 2006) (concluding that a noise ordinance was not vague, even though it lacked precise measurements, and noting that such measurements would not be helpful to the ordinary person "because people do not carry around yardsticks or decibel meters").

In one last argument, Zuniga argues that we should still hold that the Act is void for vagueness because a lower court in another jurisdiction concluded that the term "approaching" was impermissibly vague in a different traffic law. *See New York v. Dybak*, 205 N.Y.S.2d 454, 456 (Ulster Cty. Ct. 1960). The authority cited by

11

Zuniga is not binding on us, and it predates *Cox v. Louisiana*, 379 U.S. 559 (1965), in which the Supreme Court rejected a vagueness challenge to a picketing ordinance that forbade certain demonstrations "near" a courthouse, despite any quantifiable measurement for the word "near." *Id.* at 568–69. Other courts have followed *Cox* in similar cases, rejecting vagueness challenges to laws and regulations when those enactments were written with descriptive terms, as opposed to precise numerical figures. *See Bruce & Tanya & Assocs., Inc. v. Bd. of Supervisors of Fairfax County, Va.*, 854 Fed. App'x 521, 528–29 (4th Cir. 2021) (statute that prohibited signage "within the limits of the highway" was not impermissibly vague); *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 972–73 (9th Cir. 2003) (ordinance prohibiting hotel owners from contributing to nuisance activities on or in "close proximity to" the property was not impermissibly vague); *Brennan v. Occupational Safety & Health Rev. Comm'n*, 505 F.2d 869, 872–73 (10th Cir. 1974) (regulation requiring a person trained in first aid if there was no infirmary, clinic, or hospital "in near proximity" to the workplace was not impermissibly vague). Because the word "near" is related to the word "approaching," we conclude that *Cox* is more persuasive, and that the Act here is not vague on its face.

## CONCLUSION

The judgment granting habeas corpus relief in Trial Court Cause No. 2336003 (Appeals Court Cause No. 14-21-00757-CR) is reversed, and that case is remanded for additional proceedings, as that was the case in which the charging instrument was filed. The judgment granting habeas corpus relief in Trial Court Cause No. 2386601 (Appeals Court Cause No. 14-21-00758-CR) is reversed, and judgment is rendered in that case denying Zuniga's application for writ of habeas corpus.

/s/     Tracy Christopher
Chief Justice


Panel consists of Chief Justice Christopher and Justices Wise and Hassan. Justice Hassan joins all parts of this opinion, except Part V.

Publish — Tex. R. App. P. 47.2(b).