

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

---

### NO. PD-0013-24

---

### CHARLES BITTICK, Appellant

### v.

### THE STATE OF TEXAS

---

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SECOND COURT OF APPEALS
### TARRANT COUNTY

---

**KEEL, J., delivered the opinion of the Court in which KELLER, P.J., and HERVEY, RICHARDSON, YEARY, and SLAUGHTER, JJ., joined. NEWELL and MCCLURE, JJ., concurred. WALKER, J., did not participate.**

### O P I N I O N

A jury convicted Appellant of aggravated assault and engaging in organized criminal activity ("EOCA"). On appeal he challenged, among other things, the sufficiency of the evidence to support his EOCA conviction. The court of appeals affirmed the conviction. *Bittick v. State*, 680 S.W.3d 405, 418 (Tex. App.—Fort Worth 2023). We granted review to decide whether an EOCA conviction depends on a

defendant's commission of multiple crimes. It does not; a defendant's commission of a single predicate crime will support the conviction.

## I. Background

### A. Appellant and Vagos

According to the collective testimony of law enforcement officers:

Vagos was a criminal street gang that first moved into Texas around 2018. In September of that year, gang-unit officers encountered Appellant and other Vagos members at a motorcycle rally at the Fort Worth Stockyards. Appellant admitted to them that he was a member of Vagos and allowed them to take photographs of him wearing his "cut." It displayed the Vagos logo and a "bottom rocker" that said "California" and meant that he was a fully-fledged member of Vagos, not merely a prospect. Other patches displayed "We give what we get," the gang's motto; "Green Nation," a reference to Vagos's colors; "1%," indicating that Vagos is an outlaw gang unlike the 99% of motorcyclists who follow the law; "MF," suggesting that he had had a violent encounter with a non-club member; and a swastika, signifying that Appellant's chapter consisted of white males.

Officers investigating Vagos at the Stockyard rally also talked to Christopher Vick and photographed him wearing his cut. Vick had a leather cut, indicating that he had been a Vagos member for at least five years. His cut included many of the same patches as Appellant's, plus a Loki patch, signifying that he had had a violent encounter with rival club members. Most notably, Vick's cut included two patches that said "nomad."

The officers explained that these indicated that Vick was a high-ranking Vagos member handpicked to start a new chapter in a new area.   The investigating officers arrested three Vagos members for unlawfully carrying weapons, but not Appellant or Vick.

## B.   The Assault

On June 1, 2019, David Perez stopped at a 7-Eleven on his way home from work, and Appellant and a group of people parked next to him in a pickup truck.   The truck's occupants wore Vagos colors and/or insignia.   Perez said something to Appellant after he opened his truck door and hit Perez's car, and Appellant punched him twice in the face.   Appellant's compatriots soon joined in, and they chased, punched, and kicked Perez before leaving the scene in their truck.

After retreating into the store, Perez called for help, and his wife, her sister, and police soon arrived.   From store video footage, officers identified two Vagos members among Perez's attackers—Appellant and William Canida.   During the on-scene investigation, a man arrived on a motorcycle, stored his cut in a saddle bag, and entered the store.   He seemed interested in the investigation and listened to Perez's conversation with police and watched some of the security footage of the assault.   He re-donned his cut when he left the store.   Perez's sister-in-law recognized the logo on his cut from that worn by attackers shown in the video and told investigators about her observations. Gang unit officers later identified him as Vick.

## C.   Court of Appeals

Appellant argued on appeal that the evidence was legally insufficient to support

his EOCA conviction because it did not show that he "continuously or regularly" committed crimes other than the predicate offense of aggravated assault, but the court of appeals upheld the conviction. *Bittick v. State*, 680 S.W.3d 405, 418 (Tex. App.—Fort Worth 2023). It reasoned that the State needed to show only Appellant's "individual participation in crime." *Id.* at 417 (quoting *Martin v. State*, 635 S.W.3d 672, 679 (Tex. Crim. App. 2021)). It noted that, unlike the statute at issue in *Martin*, § 71.02 merely enhances the severity of already-criminalized acts. *Id.* at 418. It held that "when the State proved that [Appellant] committed the underlying predicate crime, it simultaneously proved his 'individual participation in crime.'" *Id.* (quoting *Martin*, 635 S.W.3d at 679).

Appellant challenges the court of appeals's holding as a misinterpretation of *Martin*. He argues that the "continuous association" requirement for street-gang membership is not satisfied by commission of a single EOCA predicate crime; a defendant's connection to continuous criminal conduct is required.

## II. Standard of Review

We assess legal sufficiency by viewing the evidence in the light most favorable to the verdict and asking whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Zuniga v. State*, 551 S.W.3d 729, 732 (Tex. Crim. App. 2018). We compare the trial evidence to "the elements of the offense as defined by a hypothetically correct jury charge for the case." *Zuniga*, 551 S.W.3d at 733 (quoting *Malik v. State*, 953

S.W.2d 234, 240 (Tex. Crim. App. 1997)). And we review de novo a sufficiency question that depends on statutory construction. *Long v. State*, 535 S.W.3d 511, 519 (Tex. Crim. App. 2017). Statutory construction depends on the statute's literal text. *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991). We give effect to its plain meaning unless the language is ambiguous or would lead to absurd results that the Legislature could not possibly have intended. *Id.* When a statute does not define a term, we construe it according to common usage. *State v. Hardin*, 664 S.W.3d 867, 873 (Tex. Crim. App. 2022).

## III. EOCA

As pertinent here, a person commits EOCA if he, "as a member of a criminal street gang . . . commits or conspires to commit one or more of the following: (1) aggravated assault[.]" Tex. Penal Code § 71.02(a). A hypothetically correct jury charge would require proof that a defendant 1) as a member of a criminal street gang 2) committed aggravated assault. *Zuniga*, 551 S.W.3d at 735.

A "criminal street gang" is "three or more persons having a common identifying sign or symbol or an identifiable leadership who continuously or regularly associate in the commission of criminal activity." Tex. Penal Code §71.01(d). Acting "as a member of a criminal street gang" means "acting 'in the role, capacity, or function of' a gang member at the time of the offense." *Zuniga*, 551 S.W.3d at 735 (quoting American Heritage College Dictionary 78 (3d ed. 1993) (defining "as")). It requires "proof of a connection or nexus between the defendant's commission of the underlying offense and

his gang membership." *Id.* at 734.

In *Villa v. State*, the assault victim's testimony that Villa and five other gang members attacked him was sufficient to show Villa acted as a gang member. 514 S.W.3d 227, 232-33 (Tex. Crim. App. 2017). The victim did not have "to explain how he knew [Villa] was a gang member for a rational jury to believe that he did in fact know it." *Id.* at 233. And the evidence was sufficient to show that the attack "was a gang-motivated crime" because the "other attackers were identified as gang members," and Villa "worked in concert" with them, adding "further support for the jury's conclusion that [Villa] was himself a gang member." *Id.* Notably, we did not require proof that Villa committed any other crimes to establish his membership. There was sufficient evidence "on the basis of the complainant's testimony alone." *Id.*

In *Zuniga*, the evidence was sufficient to show that the defendant "was acting in the role, capacity, or function of 'a member of a criminal street gang'" when he shot the two victims. *Zuniga*, 551 S.W.3d at 736. He was "an established member" of a gang. *Id.* at 738. The murders were committed "at a location known to be frequented" by the gang. *Id.* Other known members of the gang joined in the attack "alongside and in cooperation with" Zuniga. *Id.* The victims were members of a rival gang. *Id.* The gang would typically assault rival gang members who encroached on their territory. *Id.* And Zuniga had earlier told "Sparky" to "do his job." *Id.* Given these facts, a rational jury could conclude that "the coordinated assault on [the victims by gang members] was gang-related activity" and that Zuniga's cooperation with other gang members in the

attack "was pursuant to his role, capacity, or function as a" gang member. *Id.*

## IV. Analysis

In 2018, Appellant was identified as a member of Vagos, a criminal street gang. *See* § 71.01(d). In 2019, he and another documented Vagos member, Canida, acted together with others wearing Vagos colors to attack the complaining witness. They arrived together, surrounded and chased the complainant, beat and kicked him, and then fled together. After the fact, Vagos poobah Vick surveilled the on-scene investigation, further demonstrating a nexus between the assault and the gang. Based on this evidence, any rational jury could have found beyond a reasonable doubt that Appellant committed aggravated assault as a member of Vagos, a criminal street gang—the only requirements of an EOCA conviction. *See Zuniga*, 551 S.W.3d at 735; *Villa*, 514 S.W.3d at 228.

Appellant, however, argues that more was required. He claims that *Martin* imposed onto § 71.02 a requirement that the defendant commit multiple criminal acts since a gang member must be one of the people in the gang who "continuously or regularly" commits crimes. *See Martin*, 635 S.W.3d at 677-80; *see also Nguyen v. State*, 1 S.W.3d 694, 696 (Tex. Crim. App. 1999) (the phrase "carrying on criminal activities" in § 71.01(a) (combinations) implies doing more than one thing). *Martin*, however, interpreted the Unlawful Carrying of a Weapon (UCW) statute, which differs significantly from the EOCA statute. And even if *Martin* applied here, its reasoning supports Appellant's conviction.

Martin was convicted under an old version of Penal Code § 46.02(a-1)(2)(C) that

criminalized carrying a handgun in a motor vehicle or watercraft if "the person is … a member of a criminal street gang as defined by section 71.01." *Martin*, 635 S.W.3d at 673; *see* Act of June 15, 2007, 80th Leg., R.S., ch. 693, sec. 1, 2007 Tex. Gen. Laws 1318 (current statute at Tex. Penal Code § 46.04(a-1)). He challenged the sufficiency of the evidence to show he was a member of the Cossacks, arguing that the evidence failed to show that he personally committed crimes. *Id.* at 675. He "admitted that he was factually a Cossacks member but denied that he was legally a Cossacks member because the State failed to prove that he was personally a criminal." *Id.* at 675-76 (citing *Ex Parte Flores*, 483 S.W.3d 632 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd)). The State countered that the statute's plain language required it to prove only that Martin was a member of the Cossacks, not that he participated in the gang's crimes. *Id.* at 676.

We held that under the UCW statute, "a person is a 'member' of a criminal street gang only when he is 'one of the three or more persons who continuously or regularly associate in the commission of criminal activities.'" *Id.* at 678 (adopting the reasoning of *Ex Parte Flores*, 483 S.W.3d 632). We rejected the State's broader definition since it would "trigger the culpability of an otherwise innocent person merely by joining or participating in" a criminal street gang "with or without knowledge of the organization's criminal activity." *Id.* Under that definition, even "innocent" members who did not know of the gang's criminal activities would risk prosecution by engaging in otherwise lawful acts. *Id.* at 678. Their conviction would require neither a *mens rea* nor an *actus reus*. *Id.* at 679. We lamented, "Though not a criminal for purposes of carrying a

firearm, [Martin] became one simply by riding his motorcycle while wearing his cut."
*Id.* at 678.

Instead of that absurd result, *Martin* reasoned that the Legislature must have intended "member" in the UCW statute to be read together with the definition of "criminal street gang" in § 71.01(d) so that the actor must "continuously or regularly" engage in crime. *Id.* at 679. We said, "This interpretation of section 46.02(a-1)(2)(C) does not" implicate the First Amendment or make a person a gang member "simply by association with a" gang. *Id.* "The *Flores* court properly clarified what conduct makes an individual a member of a criminal street gang: individual participation in crime." *Id.* "Because no evidence showed Martin knew of the Cossacks' criminal activities or that he was "involved in any criminal activity pursuant to his membership in the Cossacks[,]" he "did not come within the purview of Texas Penal Code sections 46.02(a-1)(2)(C) or 71.01(d)." *Id.*

But the EOCA statute differs from the UCW statute in that it does not criminalize otherwise-lawful conduct; instead it enhances punishment for a specific, already-criminalized act when committed by a gang member. Tex. Penal Code §§ 71.02(a)(1)-(21). Even though § 71.02 requires only one criminal act, it still requires proof of a *mens rea* and an *actus reus*, *compare with Martin*, 635 S.W.3d at 678; it requires individual participation in crime, *id.* at 679; it does not punish mere membership in a group, *id.* at 678; it does not punish members who are ignorant of the gang's criminal activities, *id.*; and it does not implicate the right to freely associate; *id.* at 679.

Appellant's case is the inverse of Martin's. Martin was an "otherwise innocent" gang member who "became" a criminal simply by wearing his gang attire. *Id.* at 678. The State failed to prove even that Martin knew about the gang's criminal activity, much less that he individually participated in crime "pursuant to his" gang membership. *Id.* at 680. But here the State proved that Appellant individually participated in crime pursuant to his gang membership—the aggravated assault on Perez—and thus met its burden of proof for an EOCA conviction. *Zuniga*, 551 S.W.3d at 735; *Villa*, 514 S.W.3d 227, 232-33. The State also offered evidence of his awareness of his gang's criminal activities when it documented his cut's "1%" and "MF" patches the year before the assault. In short, the evidence we found lacking against Martin was amply brought to bear against Appellant.

## VI. Conclusion

By its plain language, § 71.02 punishes anyone who commits a designated crime as a gang member. The evidence proved that Appellant did just that. We affirm the judgment of the court of appeals.

Delivered: November 27, 2024

Publish