**Opinion issued August 8, 2017**



In The

# Court of Appeals

For The

# First District of Texas

_____

### NO. 01-16-00523-CR

_____

## EX PARTE CYPRESS CREEK EMS, Appellant

---

**On Appeal from the County Criminal Court at Law No. 4**
**Harris County, Texas**
**Trial Court Case No. 2096756**

---

## MEMORANDUM OPINION

Appellant, Cypress Creek EMS, challenges the trial court's order denying its pretrial application for a writ of habeas corpus.[1] In two issues, appellant contends that the trial court erred in denying the requested relief.

---

[1] *See* TEX. CODE CRIM. PROC. ANN. art. 11.09 (Vernon 2005) (providing person confined on charge of misdemeanor may apply for writ of habeas corpus); *see also*

We affirm.

## Background

Appellant, a nonprofit corporation subject to the provisions of the Texas Business Organizations Code relating to nonprofit corporations (the "Nonprofit Corporation Act"),[2] provides emergency services to portions of Harris County. With some exceptions, the Nonprofit Corporation Act requires a nonprofit corporation to "maintain current and accurate financial records with complete entries as to each financial transaction of the corporation, including income and expenditures, in accordance with generally accepted accounting principles."[3] The nonprofit corporation must "keep records, books, and annual reports of the corporation's financial activity at the corporation's registered or principal office in this state for at least three years after the close of the fiscal year."[4] It "shall make the records, books, and reports available to the public for inspection and copying at the corporation's registered or principal office during regular business hours."[5] And a nonprofit corporation "commits an offense if the corporation fails to maintain a financial

---

id. art. 11.01 (Vernon 2005) ("The writ of habeas corpus is the remedy to be used when any person is restrained in his liberty.").

[2] *See* TEX. BUS. ORGS. CODE ANN. §§ 22.201–22.409 (Vernon 2012 & Supp. 2016).

[3] *Id.* § 22.352(a); *see id.* §22.355 (setting out exemptions from requirements relating to financial records and annual reports).

[4] *Id*. § 22.353(a).

[5] *Id.* § 22.353(b).

2

record, prepare an annual report, or make the record or report available to the public" as required by statute.[6] The offense is a Class B misdemeanor.[7]

In August 2014, Wayne Dolcefino, a private investigator, sought from appellant, pursuant to the Nonprofit Corporation Act, "payroll information of all employees of [appellant] since January 1, 2013, including the names of the employees, their position, and their annual salary, benefits and overtime."[8] Several months later, the Harris County District Attorney filed an information, accusing appellant of:

> intentionally and knowingly fail[ing] to make available to the public a financial record, of [appellant's] financial activity, namely, documents detailing the annual salary and compensation for administrative employees of [appellant] for the period 2010 continuing through 2014, namely, [appellant] failed to make said financial record available to the public for inspection and copying at [appellant's] registered office of the State of Texas, namely, 7111 Five Fork Dr[.], Spring, Texas 77379.[9]

(Emphasis omitted.) The State then served appellant with a subpoena requesting for appellant's administrative staff, for the period July 1, 2010 through the present, and

---

[6]     *Id.* § 22.354(a).

[7]     *Id.* § 22.354(b). The punishment for a Class B misdemeanor is a fine not to exceed $2,000 and confinement in jail for no more than 180 days. TEX. PENAL CODE ANN. § 12.22 (Vernon 2011). If a corporation is adjudged guilty of an offense that provides a penalty including imprisonment, a court may assess punishment at a fine not to exceed $10,000. *Id.* § 12.51(b)(1) (Vernon 2011); *see Tarlton v. State*, 93 S.W.3d 168, 176 n.3 (Tex. App.—Houston [14th Dist.] 2002, pet. ref'd).

[8]     *See* TEX. BUS. ORGS. CODE ANN. § 22.353(b).

[9]     *See id.* § 22.354(b).

3

all employees, for the period January 1, 2013 through the present, "[d]ocuments detailing the[ir] payroll information, including annual salaries and any other financial compensation" and "the names of these employees, their position, their annual pay, benefits and overtime." In response, appellant moved to dismiss the information and quash the subpoena, asserting, among other things, that the requested information was not subject to disclosure under the Nonprofit Corporation Act, and the requested information was privileged and confidential commercial information exempt from disclosure, and production of the information "would constitute a clearly unwarranted invasion of privacy."

On March 17, 2016, the trial court held a hearing on appellant's motions to dismiss the information and quash the State's subpoena at which Andrew McKinney, appellant's general counsel, testified that Dolcefino, pursuant to the Texas Public Information Act[10] and the Nonprofit Corporation Act, requested "payroll information of all employees of [appellant] since January 1, 2013, including the names of the employees, their position, and their annual pay, benefits and overtime." McKinney explained that appellant, "believing that [it] was subject to the Public Information Act," complied with Dolcefino's requests "except for the demand for compensation benefits and overtime for the administrative staff." In accordance with the Public Information Act, appellant also "t[ook] the issue" to the Texas

---

[10] *See* TEX. GOV'T CODE ANN. §§ 552.001–.353 (Vernon 2012 & Supp. 2016).

Attorney General, who concluded that "to the extent that public funds are used to pay salaries of employees of a private entity, the identity and salaries of those employees so funded is subject to the [Public Information Act]." Appellant then filed suit in a Travis County district court to challenge the Attorney General's opinion. On March 4, 2016, the Travis County district court concluded that appellant is not subject to the Public Information Act.[11]

McKinney opined that the State's criminal prosecution is "not grounded" in the Public Information Act but in the Nonprofit Corporation Act. And he advised appellant that the Nonprofit Corporation Act does not require disclosure of "annual salary and compensation for administrative employees" and it had complied "in terms of the reporting and disclosure requirements within that Act." McKinney explained that appellant has "an annual independent audit of its books and records" and "publishes an unaudited financial report each month that's available to the public." These financial reports reflect "how much in each year [appellant] pays for general and administrative employees," and "employee health benefits" and appellant had provided these reports to Dolcefino.

McKinney further testified that appellant's board of directors "takes very, very seriously" the fact that appellant remains charged with a crime. He explained

---

[11]  *See Greater Hous. P'ship v. Paxton*, 468 S.W.3d 51, 67 (Tex. 2015) (holding entity not "supported in whole or in part by public funds" not "governmental body" under Public Information Act).

that appellant originally was "almost an all-volunteer organization" and board members, who "probably [have] an average age of 75," had been with appellant "almost from the beginning and [were] never paid a penny. All the men are ex-military. These are the kind of people it's a privilege to serve. And they don't take being accused of a crime lightly."

In addition to McKinney's testimony, appellant offered, and the trial court admitted, with no objection, into evidence a copy of the information; "Financial Statements and Supplemental Information . . . with Independent Auditor's Report" for the years ending December 31, 2012, December 31, 2013, and December 31, 2014; "Cypress EMS Profit & Loss Budget Performance," dated December 2012, December 2013, and December 2014; and "Cypress Creek EMS Sources and Uses of Funds January through August 2015."

Asserting that its motion to dismiss the information attacked the constitutionality of the controlling statue and "should have properly been styled and filed as a writ of habeas corpus," appellant asked the trial court to allow appellant "to file a writ in the interim" and "consider all the evidence in connection with the writ as well." The trial court agreed and allowed appellant to file the application for a writ of habeas corpus and the State to respond.

Appellant then filed its application and amended application for a writ of habeas corpus, arguing that pertinent provisions of the Nonprofit Corporation Act[12] are unconstitutionally vague on their face because the terms "financial activity" and "financial records" are ambiguous and the statute "articulates no applicable *mens rea* standard." Appellant further argued that the provisions are unconstitutionally vague and violate due process rights because "the law puts businesses such as [appellant] in impossible situations, where they must either relinquish their rights to pursue clarification of the law" and "reveal their trade secrets or else be subject to prosecution."

The trial court denied appellant's requested habeas relief. In a written order, it concluded that "a corporation can have a liberty interest that is restrained by a criminal statute or prosecution." It noted, however, that appellant had "failed to establish that its liberty [was] restrained in a manner sufficient to invoke this Court's habeas jurisdiction." The trial court explained that even had appellant "properly invoked [the trial court's] habeas jurisdiction, its claim fail[ed] on the merits" because the use of the terms "financial records" and "financial activity" did not render the statute "facially unconstitutional for vagueness." Moreover, it stated that "[r]ecords showing payroll expenses and recipients . . . are unquestionably 'financial records' and records concerning 'financial activities.'" The trial court further

---

[12] *See* TEX. BUS. ORGS. CODE ANN. §§ 22.353, 22.354.

concluded that the information alleged that appellant "'intentionally and knowingly' engaged in criminal conduct" and "comport[ed] to the law." Finally, the trial court explained that "seeking an Attorney General's Opinion is not a constitutionally protected right" and appellant "presented no evidence that it actually relinquished or abandoned any 'right' to pursue an Attorney General's Office opinion."

**Standard of Review**

"[A] pretrial habeas, followed by an interlocutory appeal, is an 'extraordinary remedy,' and 'appellate courts have been careful to ensure that a pretrial writ is not misused to secure pretrial appellate review of matters that in actual fact should not be put before appellate courts at the pretrial stage.'" *Ex parte Ellis*, 309 S.W.3d 71, 79 (Tex. Crim. App. 2010) (quoting *Ex parte Doster*, 303 S.W.3d 720, 724 (Tex. Crim. App. 2010)). A claim is cognizable in a pretrial writ of habeas corpus if, resolved in the defendant's favor, it would deprive the trial court of the power to proceed and result in the defendant's immediate release. *Ex parte Smith*, 185 S.W.3d 887, 892 (Tex. Crim. App. 2006) (citing *Ex parte Weise*, 55 S.W.3d 617, 619 (Tex. Crim. App. 2001)). Accordingly, a defendant may use a pretrial writ application to assert that the statute under which the applicant is prosecuted is unconstitutional on its face because the statute's invalidity would render the charging instrument void. *Ex parte Thompson*, 442 S.W.3d 325, 333 (Tex. Crim. App. 2014); *Ex parte Flores*,

483 S.W.3d 632, 638 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd) (citing *Ex parte Weise*, 55 S.W.3d at 620).

We generally review a trial court's ruling on an application for a pretrial writ of habeas corpus for an abuse of discretion. *Washington v. State*, 326 S.W.3d 701, 704 (Tex. App.—Houston [1st Dist.] 2010, no pet.) (citing *Ex parte Wheeler*, 203 S.W.3d 317, 324 (Tex. Crim. App. 2006)). In conducting this review, we view the facts in the light most favorable to the trial court's ruling and uphold that ruling absent an abuse of discretion. *Wheeler*, 203 S.W.3d at 324. We afford almost total deference to a trial court's factual findings when those findings are based upon credibility and demeanor. *Ex parte Amezquita*, 223 S.W.3d 363, 367 (Tex. Crim. App. 2006) (quoting *Ex parte White*, 160 S.W.3d 46, 50 (Tex. Crim. App. 2004)). However, a facial attack upon a penal statute is a question of law that we review de novo. *Ex parte Lo*, 424 S.W.3d 10, 14 (Tex. Crim. App. 2013); *Mims v. State*, 434 S.W.3d 265, 268 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Karenev v. State*, 281 S.W.3d 428, 435 (Tex. Crim. App. 2008)). An applicant for habeas relief has the burden of proof as to the application. *Washington*, 326 S.W.3d at 706 (citing *Ex parte Chandler*, 182 S.W.3d 350, 353 n.2 (Tex. Crim. App. 2005); *Ex parte Kimes*, 872 S.W.2d 700, 703 (Tex. Crim. App. 1993)).

**Restraint**

As an initial matter, we consider whether appellant established that it was confined or restrained as required for habeas relief. *See Le v. State*, 300 S.W.3d 324, 325–26 (Tex. App.—Houston [14th Dist.] 2009, no pet.). To be entitled to habeas relief, an applicant must be illegally restrained in his liberty. *Ex parte Weise*, 55 S.W.3d at 619 (citations omitted); *see* TEX. CODE CRIM. PROC. ANN. arts. 11.01 (Vernon 2005) (providing habeas corpus is "remedy to be used when any person is restrained in his liberty"); 11.09 (Vernon 2009) (providing person "confined on a charge of misdemeanor," may file application for writ of habeas corpus). Accordingly, an applicant for habeas corpus relief must establish that the applicant was unlawfully confined or restrained by an accusation or conviction. *Ex parte Schmidt*, 109 S.W.3d 480, 483 (Tex. Crim. App. 2003); *Ex parte Weise*, 55 S.W.3d at 619. A person is "restrained" if under "the kind of control which one person exercises over another, not to confine him within certain limits, but to subject him to the general authority and power of the person claiming such right." TEX. CODE CRIM. PROC. ANN. art. 11.22 (Vernon 2005). "Restraint" is construed broadly in the context of habeas corpus writ applications. *See Ex parte Cathcart*, 13 S.W.3d 414, 417 (Tex. Crim. App. 2000) (citing *Ex parte Ormsby*, 676 S.W.2d 130, 132 n.4 (Tex. Crim. App. 1984); *Gibson v. State,* 921 S.W.2d 747, 754 (Tex. App.—El Paso 1996, writ denied)); *see also Ex parte Davis*, 748 S.W.2d 555, 557 (Tex. App.—Houston

10

[1st Dist.] 1988, pet. ref'd) (citing TEX. CODE CRIM. PROC. Ann. art. 11.64 (Vernon 2005)) ("Concepts of 'confinement' and 'restraint' encompass incarceration, release on bail or bond, release on probation or parole, or any other restraint on 'personal liberty.'").

Here, the trial court concluded that appellant "fail[ed] to argue the point at all" in its habeas application and "establish sufficient evidence at the hearing to show that its ability to engage in its normal course of business [was] impacted any more than that belonging to any other criminal defendant." Thus, the trial court further concluded that appellant "failed to establish that its liberty [was] restrained in a manner sufficient to invoke" the trial court's habeas jurisdiction.

In this Court, the State argues that appellant is not entitled to habeas relief because a corporation "is not a 'person' capable of being restrained, confined, or detained" and "the Code of Criminal Procedure evidences a legislative choice to make habeas remedies available only to physical persons." Appellant asserts that "[a] legal 'person' is broader than simply a 'natural person'" and it "has the same 'rights and duties' as a natural person to abide by the Business [Organizations] Code, so logically it should have equal rights to challenge the vagueness of such laws."

Chapter 17A of the Texas Code of Criminal Procedure "sets out some of the procedural rules applicable to the criminal responsibility of corporations and associations." TEX. CODE CRIM. PROC. ANN. art. 17A.01(a) (Vernon 2015). When

11

not in conflict with chapter 17A, "the other chapters" of the Code of Criminal Procedure "apply to corporations and associations." *Id.* And, "unless the context requires a different definition," chapter 17A defines "person" to include "corporation and association." *Id.* art. 17A.01(b)(4); *cf.* TEX. PENAL CODE ANN. §§ 1.07(13) (defining "corporation" to include "nonprofit corporations"), 1.07(38) (Vernon Supp. 2016) (providing "person" means "individual, corporation, or association"). The State argues that, in the context of the provisions relating to habeas relief, "person" includes only "physical persons" because a corporation "is incapable of being detained, restrained, or confined." *See Specialized Waste Sys., Inc. v. State*, 126 S.W.3d 530, 531 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (concluding Code of Criminal Procedure article 55.01 "required[d] a different definition" of "person" because it limits expunction to persons wrongfully arrested and corporations not subject to arrest); *see also* TEX. CODE CRIM. PROC. ANN. art. 17A.03(b) ("No individual may be arrested upon a complaint, indictment, information, judgment, or sentence against a corporation or association.").

We need not decide whether "habeas remedies [are] available only to physical persons" because appellant did not establish that it is confined or restrained. In its habeas application, appellant did not assert that it is confined or restrained as a result of the challenged information. Regardless, appellant asserts that "[t]he fact that [it] is restrained was well established" through McKinney's testimony at the trial court

12

hearing. According to appellant, McKinney explained that it had "spent hundreds of thousands of dollars fighting against the allegations of Mr. Dolcefino and the State" and the "criminal charges have had a drastic impact" on appellant's board of directors, who "take being charged with a crime extremely seriously, which has cost [appellant] significant resources."

The record reflects that Dolcefino, pursuant to the Public Information Act and the Nonprofit Corporation Act, sought "payroll information" for appellant's administrative staff and employees, including their names, position, annual pay, benefits, and overtime. Appellant, "believing that [it] was subject to the Public Information Act," complied with the requests "except for the demand for compensation benefits and overtime for the administrative staff." Appellant "t[ook] the issue" to the Attorney General, who concluded that "to the extent that public funds are used to pay salaries of employees of a private entity, the identity and salaries of those employees so funded is subject to the [Public Information Act]." Appellant then challenged this ruling in a Travis County district court, which concluded that appellant is not subject to the Public Information Act. When asked whether appellant, "several hundred thousand dollars later, in various wars in other courtrooms and potentially including this one . . . still remain[ed] charged with a crime," McKinney answered that appellant's board of directors "takes very, very seriously" the charge and did not "take being accused of a crime lightly." Although

13

appellant offered, and the trial court admitted, appellant's documents showing amounts paid for legal expenses, these documents do not reveal what portion of any amount of funds expended resulted from the criminal charge in the underlying proceeding. The evidence presented at the trial court's hearing does not demonstrate any restraint on appellant. *See City of El Paso v. Alvarez*, 931 S.W.2d 370, 379 (Tex. App.—El Paso 1996, orig. proceeding) (citing *Ex parte Calhoun*, 91 S.W.2d 1047, 1048 (Tex. 1936)) (concluding filing of complaint in municipal court, without more, did "not confine the defendant or restrain her liberty in any manner"); *see also Ex parte Davis*, 506 S.W.3d 150, 152 (Tex. App.—Tyler 2016, no pet.) (citing *Crawford v. Campbell*, 124 S.W.3d 778, 781 (Tex. App.—Houston [1st Dist.] 2003, no pet.); *Dahesh v. State*, 51 S.W.3d 300, 303 (Tex. App.—Houston [14th Dist.] 2000, pet. ref'd)) (concluding, even had applicant for post-conviction writ of habeas corpus proved insurance rates rose or he had lost status in community as result of conviction, such changes did not constitute confinement or restraint).

Considering the evidence in the light most favorable to the trial court's ruling and deferring to the trial court's findings of fact supported by the record, we conclude that the record supports the trial court's conclusion that appellant "failed to establish that its liberty [was] restrained in a manner sufficient to invoke [the trial court's] habeas jurisdiction." Accordingly, we hold that appellant has not shown

that the trial court abused its discretion in denying its application for a writ of habeas

corpus.  Having so concluded, we need not address appellant's remaining arguments.

## Conclusion

We affirm the order of the trial court.


Terry Jennings
Justice

Panel consists of Justices Jennings, Higley, and Massengale.

Do not publish.   TEX. R. APP. P. 47.2(b).